IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RASHAN-I: SAVAGE** | : | CIVIL ACTION |
| *Plaintiff, pro se* | : | |
| | : | NO. 19-1114 |
| **v.** | : | |
| | : | |
| **LEDERER,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                    MAY 1, 2024

# MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Rashan-I: Savage filed this 42 U.S.C. § 1983 ("§ 1983") action against numerous defendants, including Defendants Southeastern Pennsylvania Transportation Authority ("SEPTA") Officers Sean Camburn ("Defendant Camburn") and Stephen Rooney ("Defendant Rooney") (collectively, "Defendants"),[1] alleging that Defendants violated Plaintiff's First, Fourth, and Fifth Amendment rights when these officers stopped and arrested him.[2] (ECF 7).

---

[1] Plaintiff's original complaint also asserted claims against Defendants City of Philadelphia, Assistant District Attorneys Lederer, Kolleen McMullen, Jarek Krajewski, and Jordon Foley, and Major Hatcher and Warden Delaney. (*See* Compl., ECF 2). By Order dated March 20, 2019, this Court dismissed, with prejudice, Defendants Lederer, McMullen, Krajewski, Foley, Hatcher, and Delaney. (ECF 6).

Thereafter, Plaintiff filed an amended complaint, the operative complaint, against Defendants Camburn and Rooney, the City of Philadelphia, and the "9th District of Philadelphia Police Department." (Am. Compl., ECF 7). Pursuant to the Court's review under 28 U.S.C. § 1915, by Order dated April 12, 2019, Defendants City of Philadelphia and the "9th District of Philadelphia Police Department were dismissed, with prejudice,." (ECF 9). Defendants Camburn and Rooney are the only remaining Defendants.

[2] Plaintiff appears to assert claims for malicious prosecution and "abuse of authority" pursuant to 18 U.S.C. § 241-42 against the "municipality." (Am. Compl., ECF 7, at p. 7). As noted, the City of Philadelphia has been dismissed from this action with prejudice. (*See supra* note 1; ECF 9). In addition, 18 U.S.C. § 241-42 are criminal statutes and "there is no private right of action under criminal statutes." *Smalls v. Riviera Towers Corp.*, 782 F. App'x 201, 206 (3d Cir. 2019) (citing *Leeke v. Timmerman*, 454

Before this Court is Defendants' motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56. (ECF 86). Plaintiff has opposed the motion. (EFC 87).[3] The issues raised in Defendants' motion and Plaintiff's response have been fully briefed and are ripe for disposition. For the reasons set forth, the motion is granted and judgment is entered in favor of Defendants.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider the evidence in the light most favorable to the non-movant, here, Plaintiff. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The relevant facts supported by record evidence are summarized as follows:[4]

> On the evening of April 6, 2018, Defendants Camburn and Rooney, both SEPTA Officers, were on patrol at 15th and Market Streets near City Hall in Philadelphia, Pennsylvania, a "notorious area for narcotics sales along with associated gang activity". (Aff. of Def. Camburn, ECF 86-1, at ¶ 5). At approximately 10:00 PM, Defendants observed an individual — later identified as Plaintiff — with a noticeable "bulge" around the front of his waist area which caused them to suspect he was carrying a handgun.[5] Defendants approached Plaintiff and asked him why he had a bulge in his waistband.[6] Plaintiff said that

---

U.S. 83, 85-86 (1981)). As such, any claims asserted in the amended complaint exclusively against the City of Philadelphia based on these statutes are legally meritless.

[3] This Court has also considered Plaintiff's pretrial memorandum, which was prematurely filed, but included additional arguments. (ECF 92).

[4] These facts are gleaned from the parties' briefs, exhibits, and statements of facts. To the extent that any fact is disputed, such dispute will be noted and, if material and supported by record evidence, will be construed in Plaintiff's favor. In addition, Defendants submitted a body camera video recording of the incident, which this Court has reviewed.

Notably, Plaintiff does not attach or otherwise provide any evidence to support either his claims or the arguments in his response to Defendants' motion. Instead, Plaintiff attaches documents to support his "sovereign citizen" status in an attempt to challenge both Defendants' actions and this Court's jurisdiction.

[5] Plaintiff offers no evidence to refute the reasonableness or validity of Defendants' belief.

[6] In the amended complaint, Plaintiff alleges that he was waiting for a taxi when Defendants approached him and Defendant Rooney "tried to reach and touch [his] waist/body." (Am. Compl., ECF 7, at p. 8). Plaintiff offers no evidence to support this contention.

the bulge was his belt and started to walk away. Defendants asked Plaintiff to stop. Plaintiff responded that he did not do anything and started to run. Plaintiff crossed 15th Street and entered the northwest entrance of SEPTA's Walnut Locust station located across from City Hall. Defendants followed Plaintiff into the station concourse.

As Plaintiff ran through the station concourse, Defendants observed something, which they believed was a handgun, fall from Plaintiff's person onto the ground and Plaintiff reaching for it.[7] Defendant Camburn unholstered his service weapon and commanded Plaintiff to get on the ground. However, Plaintiff continued to run through the station. Defendant Camburn continued pursuit of Plaintiff, while Defendant Rooney retrieved the discarded item, which he discovered was, in fact, a loaded handgun with a bullet in the chamber. After running a short distance, Plaintiff stopped, surrendered, and was placed in custody. Plaintiff was arrested and processed by the Philadelphia Police Department.[8]

**LEGAL STANDARD**

Rule 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this Rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Galena*, 638 F.3d at 196.

---

[7] As noted, Plaintiff offers no evidence to refute Defendants' evidence of the stop. However, in Plaintiff's deposition, attached to Defendants' underlying motion, Plaintiff stated that the gun was not his and that he was never in possession of it. (Pl.'s Dep., ECF 86-2, 71:14-22, 75:2-14).

[8] In the amended complaint, Plaintiff alleges that he was arrested without being read his *Miranda* rights and that his personal property, such as his cellphone and debit cards, were confiscated and were never returned to him. (Am. Compl., ECF 7, at p. 8). Beyond the pleadings, Plaintiff offers no evidence to support this contention.

3

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), or rest on the allegations in the pleadings, *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* Additionally, "courts must accord special care to *pro se* claimants, liberally construing their filings and holding them to less stringent standards than formal pleadings drafted by lawyers." *In re Energy Future Holdings Corp.*, 949 F.3d 806, 824 (3d Cir. 2020).

**DISCUSSION**

In the amended complaint, Plaintiff asserts § 1983 civil rights claims against Defendants based on their alleged unlawful stop and arrest. Defendants move for summary judgment on these claims on the basis of their qualified immunity because the stop and arrest of Plaintiff were lawful actions under the existing law at the time. Notably, Plaintiff provides minimal response to Defendants' qualified immunity argument and offers no evidence to rebut any of Defendants' evidence. Instead, Plaintiff asserts, in a conclusory manner, that his rights were violated by Defendants' unconstitutional stop and arrest, and that he is a "sovereign citizen."[9]

---

[9] Through the sovereign citizen documents attached to his response, Plaintiff seems to be challenging this Court's jurisdiction and Defendants' ability to arrest him. Plaintiff asks both the Court and Defendants to provide "proof in a sworn affidavit refuting, surmounting, countering point-for-point, the plaintiff's [attached] documents." (Pl.'s Resp., ECF 87, at p. 5). Notably, these types of arguments are commonly made by individuals who refer to themselves as "sovereign citizens." "Although 'sovereign citizens' do not share identical beliefs, they generally believe that they are neither subject to federal law nor federal courts' jurisdiction." *United States v. Taylor*, 21 F.4th 94, 101 n.6 (3d Cir. 2021); *see also United States v. Banks*, 828 F.3d 609, 615 n.1 (7th Cir. 2016) ("Defendants claiming to be 'sovereign citizens' assert that the federal government is illegitimate and insist that they are not subject to its jurisdiction." (internal quotation marks and citation omitted)); *United States v. DiMartino*, 949 F.3d 67, 69 (2d Cir. 2020) (explaining that "the Sovereign Citizen movement" is "a loosely affiliated group who follow their own set of laws and, accordingly, do not recognize federal, state, or local laws, policies or regulations as legitimate" (internal quotation marks and citation omitted)).

Routinely, "[c]ourts confronted with sovereign citizens' legal theories 'summarily reject[ ]' them as frivolous." *Geiger v. Conroy*, 2023 WL 2577233, at *1 (E.D. Pa. Mar. 20, 2023) (quoting *United States v. Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013)); *see also United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented."); *Weese v. Maryland*, 2017 WL 8780880, at *1 (D. Md. Dec. 8, 2017) ("The complaint parrots the language of the now infamous 'flesh and blood' movement, similar to the beliefs and rhetoric espoused by the American Moorish and Sovereign Citizen movements, all of which have been uniformly rejected as legally frivolous by this and other Courts across the country." (internal footnote omitted)); *United States v. Young*, 735 F. App'x 793, 796 (3d Cir. 2018) (rejecting pro se litigant's claim that the court lacked jurisdiction with regard to criminal charges again him). To the extent remotely relevant to Plaintiff's § 1983 claims in this action, Plaintiff's "sovereignty" arguments are summarily rejected for the same reasons.

*Plaintiff's Fourth Amendment Claims*

Section 1983 provides an avenue for citizens to seek civil remedies when they have been deprived by a state official of their rights, in violation of federal law.  42 U.S.C. § 1983.  To establish a § 1983 claim, a plaintiff must show "a violation of a right secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law."  *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).  However, under the qualified immunity doctrine, certain officials, including police officers and other state actors performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) ("An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct.").  Qualified immunity provides not only a defense to liability, but "immunity from suit."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  Qualified immunity protects from lawsuit "all but the plainly incompetent or those who knowingly violate the law."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Here, Defendants, as SEPTA officers, are considered equivalent to law enforcement officers.  As such, Defendants argue that they are entitled to qualified immunity because the undisputed record evidence shows that they did not violate a "clearly established" constitutional right when they stopped and eventually arrested Plaintiff.[10]  When a defendant in a § 1983 action

---

[10] When multiple defendants seek qualified immunity based on the same incident, the court must separately analyze each defendant's conduct.  *Reynolds v. Mun. of Norristown*, 716 F. App'x 80, 82 (3d Cir. 2017) (citing *Grant v. City of Pittsburgh*, 98 F.3d 116, 123 (3d Cir. 1996)).  The evidence presented

asserts the defense of qualified immunity, the court must determine if the plaintiff's allegations are sufficient to establish the violation of a federal constitutional and/or statutory right. *Wilson*, 526 U.S. at 609; *see also Doe v. Delie*, 257 F.3d 309, 314 (3d Cir. 2001). "If the plaintiff's allegations meet this threshold, a court must next determine whether the right that the defendant's conduct allegedly violated was a clearly established one, about which a reasonable person would have known." *Delie*, 257 F.3d at 314-15. In doing so, the court must view the facts "in the light most favorable to the party asserting the injury." *Scott v. Harris*, 550 U.S. 372, 377 (2007).

In determining whether Defendants are entitled to qualified immunity from suit, this Court must determine: "(1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)). The inquiry may be answered in any order. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). The officer seeking to invoke qualified immunity bears the burden of showing its applicability. *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014).

As to the second prong, qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231. A "clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right" such that "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 14

---

here, however, shows that Defendants Camburn and Rooney acted and effectuated Plaintiff's arrest together under the same circumstances. Given the evidence, Defendants' immunity will be analyzed together, as one act.

(2015). Courts must consider the state of the law *at the time* of the alleged constitutional violation. *See Plumhoff*, 572 U.S. at 779. As a result, the court does "not consider later decided cases because they 'could not have given fair notice to [the officer].'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004)).

To determine whether a right was "clearly established," courts conduct a two-part inquiry. First, a court must "define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). Here, the rights allegedly violated are Plaintiff's Fourth Amendment rights to not be stopped without reasonable suspicion and seized or arrested without probable cause. Having defined the rights, this Court must next determine whether the rights were "clearly established" at the time of the alleged constitutional violation, *i.e.*, whether the right was "sufficiently clear that a reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 14. This is an "objective (albeit fact-specific) question," where "[an officer]'s subjective beliefs . . . are irrelevant." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

To address the second part of the inquiry, courts in this district first look to factually analogous precedent from the Supreme Court of the United States (the "Supreme Court") and/or the United States Court of Appeals for the Third Circuit (the "Third Circuit"). *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021). However, "[w]e do not need Supreme Court precedent or binding Third Circuit precedent to guide us if there is a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" *Fields v. City of Phila.*, 862 F.3d 353, 361 (3d Cir. 2017) (quoting *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 247-48 (3d Cir. 2016)). Courts may also consider district court decisions. *Id.* (citing *Delie*, 257 F.3d at 321 n.10). For a right to be "clearly

8

established," there need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Here, neither party cites to federal case law with respect to the reasonable suspicion and/or probable cause issues that arise in this case. Nevertheless, this Court has considered a Third Circuit opinion which determined that "Pennsylvania courts have consistently held an officer's observance of an individual's possession of a firearm in a public place in Philadelphia is sufficient to create reasonable suspicion to detain that individual for further investigation." *United States v. Cooper*, 293 F. App'x 117, 119 (3d Cir. 2008). Also, the Supreme Court has held that an officer's observance of a bulge can establish reasonable suspicion that an individual is in possession of a firearm. *See Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977) ("The bulge in the jacket permitted the officer to conclude that [defendant] was armed . . . ."); *see also United States v. Carstarphen*, 298 F. App'x 151, 157 (3d Cir. 2008) (holding that officer had reasonable suspicion to frisk defendant for weapons after "notic[ing] a bulge protruding from [defendant] . . . . [That] was consistent with the shape of a gun in light of [officer's] experience and training."); *United States v. Edmonds*, 606 F. App'x 656, 660 (3d Cir. 2015) ("[T]he officers had reasonable suspicion that [defendant] was armed and dangerous—Officer [] observed a bulge in the rear of the pants of a man who had just unsuccessfully fled from a routine traffic stop and struggled with the pursuing officers."); *United States v. Samuels*, 131 F. App'x 859, 862 (3d Cir. 2005) (holding that officers had reasonable suspicion to justify a stop when officers received a tip, defendant was in a high crime area, there was a visible bulge in defendant's waistband, and defendant walked away and refused to answer questions).

The undisputed evidence offered shows that Defendants were on patrol in a "notorious area for narcotics sales along with associated gang activity" when they observed an individual, who

they later identified as Plaintiff, "with a noticeable bulge around his front waist area, which caused [Defendants] to suspect he was concealing a handgun." (Aff. of Def. Camburn, ECF 86-1, at ¶¶ 5-7). Defendants approached Plaintiff and asked him why he had a bulge in his waistband, and Plaintiff "responded defensively and claimed that the bulge was his belt." (*Id.* at ¶¶ 8-9). Under governing federal law, Defendants' observation of Plaintiff with a bulge in his waist created reasonable suspicion that Plaintiff was in possession of a firearm. Defendants were, therefore, lawfully permitted to stop Plaintiff for further investigation. As such, under these circumstances, Defendants did not violate a constitutional right "clearly established" by federal law at the time of Plaintiff's stop.

Notwithstanding the clear federal law on this issue, Plaintiff argues that Defendants had no reasonable suspicion to stop him based on their suspicion that he had a firearm. In support, he relies exclusively on the Supreme Court of Pennsylvania's decision in *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019).[11] *Hicks*, however, was decided on May 31, 2019, more than a year after Plaintiff's arrest on April 6, 2018. Therefore, the reasonable suspicion and stop rule decided in *Hicks* could not have created a clearly established right at the time of Plaintiff's arrest and is, thus, not applicable. *See Plumhoff*, 572 U.S. at 779 ("[The Court] did not consider later decided cases because they 'could not have given fair notice to [the officer].'" (quoting *Brosseau*, 543 U.S. at 200 n.4)). Further, the *Hicks* court acknowledged that *Commonwealth v. Robinson*, 600 A.2d 957 (Pa. Super. 1991), had been the controlling state law. *Id.* ("Since 1991, in circumstances where a

---

[11] *Hicks* overruled *Commonwealth v. Robinson*, 600 A.2d 957 (Pa. Super. 1991), holding that "[w]hen many people are licensed to [carry a firearm], and violate no law by doing [so], common sense dictates that [a] police officer cannot assume that any given person [carrying a firearm] is breaking the law. Absent some other circumstances giving rise to a suspicion of criminality, a seizure upon that basis alone is unreasonable." *Hicks*, 208 A.3d at 945.

police officer encounters a person carrying a concealed firearm, our Superior Court has applied the inverse of [the *Terry v. Ohio* "stop and frisk"] rule . . . . We granted allowance of appeal in order to consider the viability of the *Robinson* rule."). Thus, Plaintiff's reliance on *Hicks* to show that Defendants' stop of Plaintiff was illegal is misguided.

As noted in *Hicks*, and argued by Defendants in their motion, at the time of Plaintiff's arrest, *Robinson* was the controlling Pennsylvania law, which applied the Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1 (1968), in instances where an officer observes a pedestrian in possession of a firearm. *Robinson* provided that:

> [P]ossession of a concealed firearm by an individual in public is sufficient to create a reasonable suspicion that the individual may be dangerous, such that an officer can approach the individual and briefly detain him in order to investigate whether the person is properly licensed.

*Robinson*, 600 A.2d at 959. Applying *Robinson*, Pennsylvania courts consistently held that an arresting officer has reasonable suspicion to stop and frisk an individual to search for weapons if he/she observes a bulge on a pedestrian's body and reasonably suspected the bulge to be a firearm. *See Commonwealth v. Graham*, 454 A.2d 132, 137 (Pa. Super. 1996) (holding that "it was reasonable for Officer [] to conclude that [defendant] may have been armed and dangerous and, thus, the lawman was justified in frisking appellant" when the officer "observed a bulge in [defendant]'s pocket"); *Commonwealth v. Fitzpatrick*, 666 A.2d 323, 326 (Pa. Super. 1995) (finding the officers' search for weapons reasonable when appellant "hurriedly ran toward his vehicle in an apparent attempt to flee. . . . [and] there was a clearly visible bulge in his left pocket." (internal quote and citation omitted)); *see also Cooper*, 293 F. App'x at 119 (citing *Robinson* and acknowledging that "Pennsylvania courts have consistently held an officer's observance of an individual's possession of a firearm in a public place in Philadelphia is sufficient to create

11


reasonable suspicion to detain that individual for further investigation."). Here, Defendants' observed Plaintiff in a public area with a bulge in his waistband which created a reasonable suspicion that he was in possession of a firearm. Under *Robinson* — a case applying Fourth Amendment law and cited favorably by the Third Circuit — a reasonable suspicion that the individual being observed possessed a firearm was sufficient grounds for Defendants to stop and search Plaintiff.

Plaintiff also claims that Defendants violated his Fourth Amendment rights by arresting him without probable cause. Plaintiff is, however, mistaken. After Defendants observed the bugle in Plaintiff's waistband and approached him about it, Plaintiff began to walk away, and Defendants followed him. (Aff. of Def. Camburn, ECF 86-1, at ¶¶ 13-14). Defendants asked Plaintiff to stop and Plaintiff "stated he did not do anything" and then ran away. (*Id.* at ¶¶ 14-16). As Plaintiff ran into the SEPTA station, Defendants believed they saw a handgun fall from Plaintiff's person. (*Id.* at ¶ 17). Where the item fell, Defendant Rooney recovered a loaded gun, and a short time later, Plaintiff surrendered to Defendant Camburn. (*Id.* at ¶¶ 22-23).

The Third Circuit has repeatedly held that a person's possession of a firearm in public in Philadelphia establishes probable cause for an arrest. *See United States v. Bond*, 173 F. App'x 144, 146 (3d Cir. 2006) ("[U]nder Pennsylvania law, a police officer has probable cause to arrest an individual for violation of section 6108 based solely on the officer's observation that the individual is in possession of a firearm on the streets of Philadelphia."); *see also United States v. Johnson*, 432 F. App'x 118, 119, 121 (holding that defendant's seizure was "well within the confines of the Fourth Amendment as [defendant]'s flight from police and [discarding of a firearm] provided police with the requisite probable cause to arrest [defendant]"); *United States v.*

*Holloway*, 489 F. App'x 591, 594 (3d Cir. 2012) ("[I]t is a crime to possess a handgun on a public street in Philadelphia." (citing *Commonwealth v. Bigelow*, 399 A.2d 392, 396 (1979)).

The bulge observed in Plaintiff's waistband, coupled with his defensive conduct, his flight, Defendants' chase and observation of what they believed was a firearm drop from Plaintiff and the immediate discovery and recovery of a discarded, loaded handgun, were facts that sufficiently established probable cause to arrest Plaintiff. Under these circumstances, Defendants' arrest was consistent with federal law. Accordingly, Defendants did not violate a constitutional right "clearly established" by federal law when they arrested Plaintiff.

In summary, based on their unrebutted observations, Defendants had reasonable suspicion to stop Plaintiff, and probable cause to arrest Plaintiff. Their conduct did not violate Plaintiff's "clearly established" constitutional rights. Under these circumstances, Defendants Camburn and Rooney are entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claims arising out of his arrest.

### *Plaintiff's Fifth Amendment Takings Clause Claim*

Plaintiff also purports to assert a claim for the violation of his Fifth Amendment rights under the Takings Clause. Specifically, Plaintiff alleges in his amended complaint that when he was arrested, his "personal property such as cell-phone and debit cards [were] confiscated by [Defendant] Camburn (which were never returned) . . . ." (Am. Compl., ECF 7, at p. 8).

Defendants argue that Plaintiff has waived this claim. To support this contention, Defendants attach to their motion Plaintiff's deposition in which Plaintiff concedes that there was no money on the confiscated cards, (Pl.'s Dep., ECF 86-2, 54:12-19), and that his claims and damages are solely based on the search, not the items seized when he was arrested, (*id*. at 56:19-57:9). Nevertheless, "outside the context of eminent domain, the government is 'not . . . required

13

to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority.'" *McKenna v. Portman*, 538 F. App'x 221, 224 (3d Cir. 2013) (quoting *Bennis v. Michigan*, 516 U.S. 442, 452 (1996)); *see also Johnson v. Manitowoc Cnty.*, 635 F.3d 331, 336 (7th Cir. 2011) (holding that the Takings Clause of the Fifth Amendment does not apply when property is retained or damaged as the result of the government's exercise of police power). In light of Plaintiff's concessions that nothing of value was confiscated and that his claims are not based on the taking of those items, and this Court's finding that Plaintiff's search and arrest were lawful, Plaintiff's purported Takings Clause claim is without merit. *See supra* discussion, at pp. 8-13. As such, Defendants' motion for summary judgment is granted as to Plaintiff's Fifth Amendment Takings Clause claim.

### *28 U.S.C. § 1915 Review of Plaintiff's Remaining Claims*

Having determined that Defendants are entitled to summary judgement on Plaintiff's Fourth Amendment and Fifth Amendment Takings Clause claims, the only remaining claims are Plaintiff's First Amendment and Fifth Amendment *Miranda*-based claims. In the amended complaint, Plaintiff alleges that his arrest violated his First Amendment right to peaceably assemble, (*see* Am. Compl., ECF 7, at p. 4), and that he was not read his *Miranda* rights in violation of the Fifth Amendment, (*see id.* at p. 8). Because Plaintiff is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires courts to dismiss "the case at any time if the court determines that . . . the action . . . fails to state a claim for which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The determination of whether a complaint or an amended complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Thus, the Court must determine whether the complaint contains

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Conclusory allegations do not suffice. *Id.* As Plaintiff is proceeding *pro se*, this Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

Here, Plaintiff does not allege any facts to support a First Amendment claim. Indeed, it is not clear from the amended complaint what conduct by Defendants purportedly violated Plaintiff's First Amendment rights. Therefore, in the absence of any alleged facts to support such claim, any purported First Amendment claim is dismissed.

As to Plaintiff's Fifth Amendment *Miranda*-based claim, this claim is not legally viable because: "Questioning a plaintiff in custody without providing *Miranda* warnings is not a basis for a § 1983 claim as long as the plaintiff's statements are not used against her at trial." *Renda v. King*, 347 F.3d 550, 557-58 (3d Cir. 2003); *see also Chavez v. Martinez*, 538 U.S. 760, 772 (2003) ("[A mere] failure to read *Miranda* warnings to [defendant] did not violate [defendant]'s constitutional rights and cannot be grounds for a § 1983 action."). Thus, Plaintiff cannot assert a Fifth Amendment *Miranda*-based claim.

In the absence of any facts and/or grounds for relief, Plaintiff's First Amendment and Fifth Amendment *Miranda*-based claims are dismissed pursuant to § 1915(e)(2)(B)(ii).

**CONCLUSION**

For the reasons set forth above, Defendants are entitled to qualified immunity. Accordingly, Defendants' motion for summary judgement is granted as to all claims arising out of the stop, search, and arrest of Plaintiff. In addition, Plaintiff's First Amendment and Fifth Amendment *Miranda*-based claims are dismissed pursuant to § 1915(e)(2)(B)(ii). An Order consistent with this Memorandum Opinion follows. *NITZA I. QUIÑONES ALEJANDRO*, J.